UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOSHUA TREADWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:24-cv-00329-JPH-MG |
| | ) |
| SAMUEL BYRD, | ) |
| CENTURION HEALTH, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Joshua Treadwell is a prisoner confined at all relevant times at the Indiana Department of Correction ("IDOC"). He brings this 42 U.S.C. § 1983 civil rights action, alleging that the defendants Dr. Samuel Byrd and Centurion Health of Indiana, LLC ("Centurian") were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Dkt. 1. Defendants have moved for summary judgment arguing that Mr. Treadwell failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this lawsuit and, in fact, received the medical treatment he requested from defendants. Dkts. 19; 21. In response, Mr. Treadwell argues that he completed the grievance process because he received a satisfactory response to his first-level grievance. Dkt. 29. Defendants' designated evidence shows that Mr. Treadwell did not pursue administrative remedies as to the care Dr. Byrd provided him before he filed his grievance

1

requesting an MRI, therefore, Defendants' motion for summary judgment, dkt. [19], is **granted in part** as to Dr. Byrd and **denied in part** as to Centurion.

## I. Legal Standards

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to

the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

### B.   Exhaustion

A prisoner must exhaust available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

As the party asserting the exhaustion defense, the defendants bear the burden of establishing that the administrative remedies upon which they rely were available to the plaintiff. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 578 U.S. 632, 642 (2016) (cleaned up). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (cleaned up).

## II.  Factual Background

### A.  The Complaint

Mr. Treadwell's complaint raised the following allegations:

- At some point before he arrived at the IDOC Reception Diagnostic Center ("RDC") in July 2022, Mr. Treadwell suffered a left knee injury that caused pain, swelling, and difficulty walking.

- While at RDC, Mr. Treadwell submitted a medical care request form and thereafter filed a grievance complaining about difficulty walking.

- Mr. Treadwell filed a second medical care request on or about September 5, 2022. At the appointment, the nurse noticed swelling and said she would request an appointment with Dr. Byrd.

- On September 17, 2022, Mr. Treadwell submitted another healthcare request form, and the nurse submitted a request for x-rays and ordered a sleeve for his knee.

- A few weeks later, Dr. Byrd saw Mr. Treadwell and prescribed meloxicam. Mr. Treadwell told him the treatment was ineffective.

4

- On May 27, 2023, a nurse provided Mr. Treadwell with ice for his knee and put him on medical lay-in. Dr. Byrd ordered x-rays on or about June 16, 2023, which showed no abnormalities.

- Dr. Byrd again saw Mr. Treadwell and treated him with injections that made the pain worse and caused increased swelling that lasted for months.

- Mr. Treadwell requested an MRI and was told that Centurion would not allow it because of cost.

- On May 10, 2024, Mr. Treadwell filed a grievance requesting an MRI, which was returned on May 22 because it was undated. Mr. Treadwell corrected the error the same day, and the grievance was accepted.

- On June 18, 2024, Mr. Treadwell received the grievance response which confirmed Dr. Byrd had referred Mr. Treadwell for an MRI.

Dkt. 1 at 2–5; dkt. 1-1 at 12.

After screening his complaint, the Court identified two Eighth Amendment claims against Defendants: (1) a deliberate indifference to a serious medical condition claim against Dr. Byrd and (2) a claim under the theory recognized in *Monell v. New York City Dep't of Social* Services, 436 U.S. 658 (1978) against Centurion based on Mr. Treadwell's allegation that Centurion denied effective medical care due to cost. Dkt. 9 at 3.

**B.  The Grievance Process**

At all times relevant to the complaint, Mr. Treadwell was incarcerated by IDOC, where the IDOC's Offender Grievance Process policy was in place. Dkt. 1 at 6; dkt. 20-4 at 3; dkt. 20-2. The grievance process consists of three steps. First, the individual must file a formal grievance. Dkt. 20-1 at 3. Next, if the individual is not satisfied with the response to the formal grievance, he may

submit an appeal to the warden. *Id.* Finally, the individual is not satisfied with the response from the warden or the warden's designee, he may file an appeal to the IDOC grievance manager. *Id.* Exhaustion of the grievance process requires completing all three steps. *Id.*

If an individual files a grievance and does not receive a response within 10 business days of submitting it, the individual "shall notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within ten (10) business days." *Id.* at 9. If an individual "receives no grievance response within twenty (20) business days of the Offender Grievance Specialist's receipt of the grievance, the offender may appeal as though the grievance had been denied." *Id.* at 12.

### C. Mr. Treadwell's Use of the Grievance Process

Mr. Treadwell submitted a grievance on May 10, 2024, where he wrote "I have a knee injury on several occasions I've complained to the doctor I've asked for an MRI numerous times but yet to have gotten it done. My knee is causing severe pain still." Dkt. 20-3 at 3. In the requested relief portion of the form, Mr. Treadwell wrote "I would like an MRI to figure out what's wrong with my knee!!" *Id.* The grievance form contained technical errors, and it was returned to him. *Id.* On May 29, 2024, Mr. Treadwell cured the errors and resubmitted his grievance. Dkt. 20-4 at 3 ¶ 11. The same day, Dr. Byrd was contacted regarding the grievance, and he ordered an MRI consult. *Id.* Mr. Treadwell received an MRI on October 17, 2024. Dkt. 30 at 21 ¶ 20. Mr. Treadwell accepted the

6

resolution and did not file an appeal. *Id.* at 20 ¶ 17. The grievance specialist at Wabash Valley has no record of any other medical grievances filed by Mr. Treadwell. *See* Dkt. 20-2.

### III.    Discussion

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," Defendants face the burden of establishing that "an administrative remedy was available and that [Mr. Treadwell] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). "An inmate must comply with the administrative grievance process that the State

7

establishes. . . ." *Id.*; *see also Ross,* 578 U.S. at 639 (the mandatory language of the PLRA "means a court may not excuse a failure to exhaust . . .").

Both Defendants contend that Mr. Treadwell did not properly exhaust his administrative grievance procedures before filing this suit. Dkt. 21 at 2. Exhaustion of administrative remedies is a "claim-specific inquiry." *Jones v. Lamb*, 124 F.4th 463, 468 (7th Cir. 2024). Therefore, the Court will consider Mr. Treadwell's claims against Defendants separately. *Id.*

### A. Defendant Centurian

Defendant Centurion argues that Mr. Treadwell did not exhaust his administrative remedies with respect to his *Monell* claim against it because Mr. Treadwell did not appeal his grievance when it was resolved in a favorable manner at step one. Dkt. 21 at 10. In response, Mr. Treadwell argues that he has exhausted his administrative remedies because there is no requirement in the IDOC grievance policy that requires a prisoner to appeal a favorable result of a grievance at step one; in fact, doing so would be frivolous and repetitive, which is in violation of the grievance procedures. Dkt. 29 at 4.

Mr. Treadwell is correct. "[T]he notion that [the plaintiff] should have appealed to higher challenges after receiving the relief he requests in his grievances is not only counter-intuitive, but is not required by the PLRA." *Thornton v. Snyder*, 428 F.3d 690, 696–97 (7th Cir. 2005) ("Once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted. Prisoners are not required to file additional complaints or appeal favorable decisions in such cases.

8

When there is no possibility of any further relief, the prisoner's duty to exhaust available remedies is complete." (citing *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004)).

After filing his grievance about obtaining an MRI, Mr. Treadwell received his MRI consult. Dkt. 20-3 at 8. Under the IDOC's offender grievance process, inmates are "permitted" to proceed to step two and appeal "if the offender disagrees with the formal response at the institution level." Dkt. 20-1 at 12. Mr. Treadwell agreed with the outcome at step one, resolving his grievance, and obviating the need for him to proceed to step two and three. Therefore, Mr. Treadwell exhausted his administrative remedies at step one. Defendant Centurion has not met its burden of proving Mr. Treadwell did not exhaust his administrative remedies under the PLRA, and therefore, its motion for summary judgment is **DENIED.**

### B. Defendant Dr. Byrd

The undisputed evidence shows that Mr. Treadwell submitted only one grievance related to the treatment of his knee injury. Dkt. 20-3 at 7. His grievance stated "I have a knee injury on several occasions I've complained to the doctor. I've asked for an MRI numerous times but yet to have gotten it done. My knee is causing me severe pain still." And in the section entitled, "State the relief you are seeking" he wrote, "I would like an MRI to figure out what's wrong with my knee!!" *Id.* Dr. Byrd contends that this grievance did not exhaust Mr. Treadwell's administrative remedies with respect to the deliberate indifference to a serious medical condition claim brought against him in this case. Dkt. 21 at

9

10. Specifically, Dr. Byrd argues that Mr. Treadwell's allegations relating to Dr. Byrd's treatment with pain medication and injections are outside the scope of the grievance, which is limited to seeking an MRI. *Id.* Mr. Treadwell argues that he did not need to file a separate grievance related to the injections or pain medication because his request for an MRI was directly tied to the prior ineffective treatments. Dkt. 29 at 28.

The purpose of the PLRA exhaustion requirement is to "ensure[] that a prison has received notice of, and an opportunity to correct, a problem before being drawn into litigation." *Jackson v. Esser*, 105 F.4th 948, 958–59 (7th Cir. 2024). A properly grieved complaint will provide the prison notice of "the nature of the wrong for which redress is sought." *Schillinger v. Kiley*, 954 F.3d 900, 995 (7th Cir. 2020). Mr. Treadwell properly exhausted his claim relating to his prior ineffective care if his grievance "provided officials a fair opportunity to address his complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

Here, Mr. Treadwell's grievance put prison officials on notice that he had a knee injury that was still causing him pain and that he had previously asked for an MRI but had not received one. *See* dkt. 20-3 at 7. This grievance gave prison officials and Dr. Byrd an opportunity to correct his complaint about receiving an MRI. Although the grievance references that Mr. Treadwell was still experiencing knee pain, his grievance does not mention Dr. Byrd or the courses of treatment that he prescribed. *See* dkt. 20-3 at 7. Without mentioning prior ineffective treatment from Dr. Byrd, prison officials were not on notice and given a fair opportunity to correct those issues. *Dorsey v. Ghosh*, No. 20-cv-000088,

10

2024 WL 4346686, at *3 (N.D. Ill. 2024) (finding that a grievance that stated "[t]his grievance concerns non-treatment of my right knee. For some years, I've been having pain . . . I need an M.R.I." did not properly exhaust an inmate's claim for deliberate indifference to a serious medical condition); *Jackson v. Ahmed*, No. 2:10-CV-00975, 2021 WL 2660067, at *5 (S.D. Ill. 2021) ("[T]his grievance is vague and it does not name, describe, or complain about the specific conduct attributable to Defendants in this case.").

Therefore, Mr. Treadwell's grievance about wanting an MRI does not contain details sufficient to exhaust his claim against Dr. Byrd for the prior ineffective injections and medications. Dr. Byrd has met his burden of proving that Mr. Treadwell did not properly exhaust his administrative remedies under the PLRA, and his motion for summary judgment is **GRANTED.**

## IV.   Conclusion

Defendants' motion for summary judgment, dkt. [19], is **granted in part** with respect to his deliberate indifference claims against Dr. Byrd. Mr. Treadwell's claims against Dr. Byrd are, therefore, **dismissed without prejudice** for failure to exhaust administrative remedies. Defendants' motion is **denied in part** with respect to Mr. Treadwell's policy and practice claim against Centurion. These claims survive and shall **proceed** in this case.

The **clerk is directed** to remove Dr. Samuel Byrd from the docket as a defendant in this matter. No partial final judgment shall issue.

**SO ORDERED.**

Date: 10/29/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

11

Distribution:

JOSHUA TREADWELL
250421
WABASH VALLEY - CF
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
CARLISLE, IN 47838

All electronically registered counsel of record